# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES KARIM MUHAMMAD,<br><br>    Plaintiff,<br><br>    vs.<br><br>PEOPLE OF CALIFORNIA; JEFFREY STARK, as an individual and as Assistant District Attorney of Alameda County; BOB CONNER, as an individual and as District Attorney Inspector; CYNTHIA CONEJO, as an individual and as Assistant Registrar of Voters Alameda County; and DOES 1-10,<br><br>    Defendants. | Case No.: C-10-01449-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This action arises out of the criminal investigation, arrest, and subsequent conviction of Plaintiff James Karim Muhammad ("Muhammad") for six felony counts of election and voter registration fraud. Muhammad brings this action under 42 U.S.C. § 1983,[1] alleging that the issuance and execution of the arrest warrant violated California state law, and deprived him of his right, under the Fourth and Fourteenth Amendments, to be secure in his person against unreasonable seizures and to have an arrest warrant issue only upon probable cause, supported by Oath or affirmation. Muhammad's Complaint originally asserted fourteen claims against five named defendants. Only

---

[1] Section 1983 provides that:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

four of those claims and one defendant – Bob Conner ("Conner"), a District Attorney Inspector and one of the arresting officers – remain.[2] These remaining claims allege that Conner (i) presented a false warrant affidavit to a superior court judge to obtain the arrest warrant; (ii) failed to knock and announce his presence prior to entering Muhammad's residence to execute the warrant; (iii) used excessive force during the arrest; and that (iv) the excessive force constituted elder abuse.

Defendant Bob Conner has moved for Summary Judgment or Alternatively for Partial Summary Judgment. ECF No. 98 ("MSJ"). Plaintiff Muhammad filed untimely "Objections" in response, ECF No. 109, to which Conner filed a Reply, ECF No. 113. The Court has reviewed the record, heard the argument of the parties, and is otherwise fully apprised of the facts and the law, and finds that there is a disputed issue of fact for trial as to whether Conner "knocked and announced" his presence prior to entering Muhammad's dwelling. Muhammad's remaining claims which focus on the false warrant affidavit and use of force are barred by qualified immunity. Accordingly, Conner is entitled to judgment as a matter of law on those Counts, specifically Counts VI, IX, and XI.

## I. BACKGROUND[3]

### A. THE TRIGGERING EVENT.

Plaintiff James Karim Muhammad ran for the public office of Board Member for Ward 2 on the Alameda-Contra Costa ("AC") Transit District Board in the November 2008 election. The AC Transit District Board Member position for which Plaintiff was running requires residence within Ward 2, located in Alameda County. In his nomination papers for the AC Transit District Board position, as well as in his voter registration papers, Muhammad listed his address as 832 34th Street, Emeryville, California, which is located within Ward 2 of the AC Transit District.

---

[2] By Order dated March 10, 2011, the other Counts and the individual Defendants were dismissed on immunity grounds. Further, the Court previously held that the State of California was never properly served and dismissed it on that basis. ECF No. 62.

[3] The background information does not constitute findings of fact and, except as otherwise noted, is cast in the light most favorable to the Plaintiff as the nonmoving party.

The Alameda County District Attorney's Office received a report from the incumbent Board Member for Ward 2 that Muhammad was committing election fraud based on the residency requirement for his candidacy. The report alleged that Muhammad did not reside in Ward 2, but rather resided in Contra Costa County, at a senior assisted living facility located at 1555 Third Street, Apartment 318, in Richmond, California. The Alameda County District Attorney's Office assigned Defendant Conner to investigate and determine Muhammad's actual city of residence.

Conner concluded from his investigation[4] that Muhammad had falsified his nomination and voter registration papers because he actually lived at 1555 Third Street, Apartment 318, in Richmond. Conner began his investigation by obtaining copies of Plaintiff's voter registration and nomination papers, in which Plaintiff declared, under penalty of perjury, that he resided at 832 34th Street in Emeryville (and in one case, in Oakland), in Alameda County.[5] Next, Conner checked California Department of Motor Vehicles ("DMV") records, which showed that Muhammad's address was P.O. Box 24673, in Oakland, but that Muhammad's residential address was 1555 Third Street, Apartment 318 in Richmond. DMV records did not list 832 34th Street, in Emeryville or Oakland, as an address for Muhammad, and Conner's historical search of DMV records confirmed that Muhammad had resided at the 1555 Third Street, Richmond address for many years.

Conner then interviewed the occupants of 832 34th Street, Oakland and 1555 Third Street, Richmond. Conner visited the 832 34th Street address on August 23, 2008, which turned out to be where Muhammad's girlfriend lives. Muhammad's girlfriend stated that Muhammad "lived" at her house four to five days a week. On August 25, 2008, Conner went to the 1555 Third Street address in Richmond, where residents of the building and the building's manager informed Conner that Muhammad lived at 1555 Third Street in Richmond. Conner left his business card with a resident of

---

[4] Conner's investigation is detailed in a search and arrest warrant affidavit, attached as Exhibit 1 to Plaintiff's Complaint.
[5] Conner's investigation revealed that 832 34th Street is actually in the city of Oakland, not Emeryville.

3

1555 Third Street, Richmond and requested Muhammad call Conner.[6] Conner received a telephone call from Muhammad a few hours after his visit to the 1555 Third Street, Richmond address.[7] During this call, Muhammad told Conner to "back off," and said that if he tried to convict Plaintiff of a crime, he would not succeed. Muhammad then hung up on Defendant. Conner Dec. ¶ 12, ECF No. 100; Ex. F, Reporter's Transcript from Criminal Trial, at 417:21-418:2, 418:22-25, 419:11-22, ECF No. 99-6.

### B.  THE WARRANT AFFIDAVITS

On October 14, 2008, Conner prepared warrant affidavits for an arrest warrant for Muhammad and a search warrant for Muhammad's home. This warrant affidavits and the warrants' execution are at the heart of this lawsuit. In the affidavits, Conner recited the facts set forth in Section I.A, *supra*, including that DMV records showed Muhammad resided at 1555 Third Street, Richmond. However, Conner omitted from the affidavits that Muhammad's mailing address for DMV purposes was a P.O. Box in Oakland. Based upon Conner's affidavits, on October 14, 2008, Superior Court Judge Leo Dorado issued the warrants to arrest Muhammad and search his home.

### C.  THE ARREST

Before executing the warrants, Conner did an online search of Muhammad's criminal history, and found that Muhammad had served a twenty-year prison term for armed robbery convictions; had two arrests for assault with a deadly weapon; an arrest for being an ex-felon with a firearm, pled to misdemeanor possession of a firearm by a felon; and an arrest for brandishing a deadly weapon, a firearm. Given Muhammad's criminal history and disposition during the telephone conversation, Conner feared of the possibility of an armed or violent response from Muhammad when Conner executed the warrants. Conner was further concerned that given his age (Muhammad was 75-years

---

[6] Conner later subpoenaed records indicating that Muhammad was billed for utility and telephone services at the 1555 Third Street, Richmond address, Muhammad received HUD rent assistance at the 1555 Third Street, Richmond address, and Muhammad's Social Security income payments were delivered to the 1555 Third Street, Richmond address.
[7] Conner recorded most of this call, which was later transcribed at Muhammad's criminal trial. Ex. F, at 415:14-419:19, ECF No. 99-6.

4

old at the time), Muhammad might fear that if arrested, his conviction would result in incarceration for the rest of his life. On October 16, 2008, the day prior to the arrest, Conner briefed the police officers who would assist him, and disclosed Plaintiff's criminal history to prepare for service of the search and arrest warrants at 1555 Third Street in Richmond.

On October 17, 2008, with the assistance of three officers not named as defendants in this lawsuit – Officers J. Patel, M. Moreno, and J. Kennedy – Conner executed the warrants at 1555 Third Street, Apartment 318 in Richmond. Upon arriving at the senior assisted living facility, the officers noticed that Muhammad's car was parked at the residence and that the engine was cold. These factors indicated to them that Muhammad was home. The officers obtained the key to Muhammad's unit from the site manager. The officers went to Muhammad's unit, and claim they heard noise inside which ceased when they knocked on the door and identified themselves as police officers.

The parties dispute whether the police officers knocked and announced their presence, or in any way identified themselves as law enforcement officers prior to entering Muhammad's dwelling. According to Muhammad, the officers failed to knock or announce prior to entering his dwelling.[8] The officers claim that prior to entering Muhammad's dwelling Conner knocked for three or four minutes, during which time he announced his presence with words to the effect of "police, we have a warrant, open the door." *See*, *e.g.*, Conner Dec. ¶ 24. The officers later described Muhammad's unit as "small," such that a person inside Muhammad's dwelling would have heard Conner knocking. Patel Dec. ¶ 12, ECF No. 105; Moreno Dec. ¶ 10, ECF No. 104. Beyond the description of "small," the Court has no other information about the premises. The officers used the key they obtained from the site manager to enter Muhammad's unit.

Once inside Muhammad's dwelling, Officers Conner and Patel entered Muhammad's bedroom

---

[8] Muhammad claims he was unaware that police were in his dwelling until the officers burst into his bedroom, led by Conner with a gun in his hand, saying: "Are you James Muhammad? I am Inspector Bob Conner who you hung the telephone up on August 25." *See* Muhammad Dep. at 103:15-18.

5

with their weapons drawn, and found Muhammad sitting on his bed, partially dressed. Conner pointed his gun at Muhammad while Officer Patel handcuffed Muhammad. The parties disagree as to the duration and the distance the gun was pointed at Muhammad. Plaintiff claims that Conner was waiving the gun two to three feet from Muhammad's face, with a finger on the trigger, for several minutes while Officer Patel handcuffed Muhammad. Conner and Officer Patel testified that the gun was aimed at Muhammad's body for no more than one-minute and the gun was never closer than five feet to Muhammad. Neither party disputes that once Muhammad was handcuffed, Conner immediately holstered his gun.

The District Attorney filed a criminal complaint charging six counts of election and voter registration fraud. A jury subsequently convicted Muhammad on all six counts. Muhammad did not appeal his convictions.

### D.  PROCEDURAL BACKGROUND

On April 6, 2010, Muhammad filed this civil rights action in federal court alleging various state and federal claims. In addition to naming Bob Conner as a defendant, Muhammad also named as defendants the State of California; Jeffrey Stark, the prosecuting Assistant District Attorney of Alameda County who obtained the arrest warrant and prosecuted his criminal case; and Cynthia Conejo, the Assistant Registrar of Voters Alameda County. Only Counts VI, X, XI, and XII of Muhammad's Complaint remain. The Sixth Count alleges that Conner presented a false affidavit to Judge Dorado on October 10, 2008, because Conner stated that Muhammad's residence in DMV Records was in Richmond, but omitted that Muhammad's mailing address is a P.O. Box in Oakland. The Tenth Count alleges that Conner failed to knock and announce his presence prior to entering Muhammad's dwelling. The Eleventh and Twelfth Counts allege excessive force and elder abuse based on Conner's pointing a gun at Muhammad.

Conner has moved for summary judgment or in the alternative, partial summary judgment on

6

all remaining claims. Conner denies that he lied under oath, denies that he did not knock and announce prior to entering Muhammad's apartment and denies that having his gun out when entering Plaintiff's residence constituted excessive force or elder abuse. He argues he is entitled to summary judgment based on: (1) qualified immunity; (2) collateral estoppel;[9] (3) the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994);[10] (4) failure to comply with the California Tort Claims Act;[11] and (5) various state law immunities.[12] Muhammad filed Objections, which the Court liberally construes as an opposition to the summary judgment motion, and Conner filed a Reply to Muhammad's Objections.

## II. LEGAL STANDARDS

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097 (2000). A fact is "material" if its proof or disproof is essential to an element of a plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986). A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

---

[9] At a suppression hearing on the warrant affidavits at issue here, Judge Reardon held that the warrant would have issued notwithstanding the allegedly omitted information.

[10] The *Heck* doctrine precludes § 1983 claims that would render *a conviction invalid* where that conviction has not been reversed, expunged, or called into question by issuance of a writ of habeas corpus. The *Heck* doctrine does not bar Muhammad's claims regarding unlawful conduct during the course of his arrest because, even if successful, plaintiff's action will not demonstrate or imply the invalidity of his convictions. *See Smithart v. Towery*, 79 F.3d 951, 951-52 (9th Cir. 1996). The Court will not elaborate further on this argument.

[11] Counsel for Defendant conceded at oral argument that a state law immunity statute cannot prevent Plaintiff from bringing a § 1983 Federal civil rights action.

[12] Two of the immunity statutes are not relevant to the claims in this lawsuit. *See* Cal. Civ. Code § 43.55 (immunity from claims of false arrest) *and* Cal. Gov. Code § 821.6 (immunity from claims of malicious prosecution). A third immunity statute does not immunize the misconduct alleged in this lawsuit. *See* Cal. Gov. Code § 820.4 (immunity from liability for acts or omissions made while exercising due care in the execution or enforcement of the law).

7

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986) (internal citation omitted).

The moving party bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact for trial. *Celotex Corp.*, *supra*, 477 U.S. at 323, 106 S.Ct. 2548. If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Liberty Lobby, Inc.*, *supra*, 477 U.S. at 250, 106 S.Ct. 2505. When the nonmoving party has failed to file an opposition, a district court may not grant a motion for summary judgment solely because the motion is not opposed. *See Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994). However, if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact, then it is appropriate to grant summary judgment. *See United States v. Real Property at Incline Village*, 47 F.3d 1511, 1520 (9th Cir. 1995), *rev'd on other grounds sub nom Degen v. United States*, 517 U.S. 820, 116 S.Ct. 1777 (1996); *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

### B.   DEFENDANT'S REQUESTS FOR JUDICIAL NOTICE

In support of his motion for summary judgment, Conner asks the Court to take judicial notice under Federal Rule of Evidence 201 of: (1) the underlying state criminal complaint against Muhammad; (2) copies of excerpts from the State case against Muhammad, *People v. Conway aka Muhammad*, Criminal Case No. 544924; (3) the jury verdicts in that State case against Muhammad, finding him guilty of six felony counts, three counts of perjury by declaration, one count of fraudulent registration of ineligible voter, one count of filing fraudulent nomination papers, and one count of

fraudulent submission of declaration of candidacy; (4) the "fact" of Defendant Conner's statements made in certified warrants and warrant affidavits issued in the State Case, and that these statements were made under penalty of perjury; (5) excerpts from the Reporter's Transcript in the State case against Muhammad; (6) the contents of the March 11, 2011 Order in this case partially granting the defendants' motion to dismiss; (7) the "fact" that Plaintiff filed this lawsuit on April 6, 2010; (8) the allegations in this Complaint, in particular the "fact" that "Plaintiff has nowhere pleaded in his current complaint in this action that he presented a government claim to the County of Alameda prior to filing" this lawsuit; and (9) that Muhammad has appealed a condition of his probation, but not the underlying convictions for six counts of election and voter registration fraud.

Under Federal Rule of Evidence 201(b), a Court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be determined accurately and readily from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Defendant's requests for judicial notice all pertain to court records and court proceedings, including records in this proceeding, and therefore all fall within the purview of Federal Rule of Evidence 201. As such, the Court grants these requests for judicial notice.[13]

## III. DISCUSSION

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Qualified immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985). It protects from suit all but

---

[13] The Court takes judicial notice that Defendant Conner made statements under penalty of perjury, not that Defendant Conner did not perjure himself.

the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986). The relevant inquiry for a claim under § 1983 is whether (1) the facts show "the officer's conduct violated a constitutional right"; and (2) the right at issue was "clearly established" at the time of the officer's allegedly wrongful conduct. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001).[14]

### A.   PRESENTING A "FALSE AFFIDAVIT" TO OBTAIN A SEARCH WARRANT – COUNT VI

The Warrant Clause of the Fourth Amendment provides the right to be free from arrest except upon showing of probable cause supported by affidavit. *See* U.S. Const. Amend. IV; *United States v. Meek*, 366 F.3d 705, 712 (9th Cir. 2004). A warrant obtained through "judicial deception" violates the Fourth Amendment. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 (1978). To prevail on a claim of deceiving a judge in connection with the issuance of an arrest warrant, a plaintiff must establish that the officer who applied for the arrest warrant "deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004).

Count VI alleges that Conner presented a false affidavit to Judge Dorado on October 10, 2008, with the intent to mislead Judge Dorado into issuing a search and arrest warrant. Complaint ¶ 33. Specifically, Muhammad alleges that Conner falsely stated that Plaintiff's address on his driver's license is Apartment 318 at 1555 Third Street, in Richmond, California. *Id.*, Ex. 2 ¶¶ 2-3. According to Muhammad, the address on his driver's license is a post office box in Oakland, and Conner should have apprised Judge Dorado of that information in the warrant affidavit. *Id.* ¶ 3. Conner argues that he did not lie in his search warrant affidavit and that the omitted information was immaterial to the finding of probable cause.

---

[14] The Supreme Court clarified that a trial court may exercise its discretion in deciding which prong to address first. *See Pearson v Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808 (2009).

*Qualified immunity analysis*

Muhammad argues, without explanation, that Conner is not entitled to immunity on his warrant affidavit claim because of *White v. Towers*, 37 Cal.2d 727, 732 (Cal. 1951). *White* does not support Muhammad's position. In *White*, the California Supreme Court affirmed the trial court's dismissal of a civil action against a law enforcement investigator on the basis of immunity because, like Conner here, the officer was acting within the scope of his authority at the time he was investigating the plaintiff.[15]

Upon review of the undisputed facts, the Court finds that Conner did not make a false statement in the warrant affidavit, and any omission was immaterial to a finding of probable cause. First, it is undisputed that Muhammad resided at 1555 Third Street, Apartment 318 in Richmond,[16] which is the information that Conner provided in the allegedly false affidavit. Additionally, Muhammad was being investigated for falsely stating that he lived at 832 34th Street in Emeryville or Oakland. The fact omitted – that Muhammad listed an address other than 832 34th Street on his driver's license – is not exculpatory. And Conner's explanation for omitting the information is reasonable: "Nobody lives at a Post Office Box." As to materiality, Alameda County Superior Court Judge Reardon held a suppression hearing and concluded that the warrant still would have issued notwithstanding the omission of Plaintiff's P.O. Box address in the warrant affidavits. MSJ, Ex F. Muhammad does not challenge this finding here. Therefore, Conner is entitled to qualified immunity on this claim and summary judgment in favor of Conner is appropriate on Count VI.

---

[15] This is the only substantive argument raised in Muhammad's "Objections." Otherwise the "Objections" raise procedural issues: Muhammad (i) "objects" to Conner noticing a hearing date *ex parte*; (ii) argues that Conner is in default; (iii) argues, in conclusory fashion, that he would be "prejudiced if the Court grants summary judgment in favor of Bob Conner while [his appeal is pending with] the California Court of Appeal"; and (iv) argues that he did not receive the summary judgment motion until December 16, 2011, which was after his opposition was due. Muhammad never filed an administrative motion for relief. Additionally, as to (iii), the only matter that Muhammad appealed was a condition of his probation. *See* Supplemental Request for Judicial Notice, ECF No. 121, Ex. J.

[16] Muhammad stated during his deposition that "[b]etween October 2003 to October 2008, I never lived at any other place except 1555 3rd Street, Richmond." Muhammad Dep. at 54:5-7.

11

**B.     FAILURE TO KNOCK AND ANNOUNCE PRIOR TO ENTERING DWELLING – COUNT X**

The Fourth Amendment's protection against unreasonable searches and seizures requires law enforcement personnel to knock on the door and announce their presence to provide residents an opportunity to open the door prior to entering a dwelling. *Wilson v. Arkansas*, 514 U.S. 927, 931-932, 115 S.Ct. 1914 (1995). The knock and announce rule protects those elements of privacy and dignity that can be destroyed by a sudden entrance. *Richards*, *supra*, 520 U.S. 385, 393, n.5, 117 S.Ct. 1416 (1997). It gives residents the "opportunity to prepare themselves for" the entry of the police. *Id.* ("The brief interlude between announcement and entry with a warrant may be the opportunity that an individual has to pull on clothes or get out of bed."). No knock entries may be justified under exigent circumstances or if knocking would be futile.[17] *Hudson v. Michigan*, 547 U.S. 586, 589-90, 126 S.Ct. 2159 (2006) ("We require only that police 'have a reasonable suspicion . . . under the particular circumstances' that one of these grounds for failing to knock and announce exists, and we have acknowledged that '[t]his showing is not high.'"). This rule of constitutional law was clearly established at the time of the alleged unlawful entry. *See Wilson*, *supra*, 514 U.S. 927, 115 S.Ct. 1914.

In Count X, Muhammad alleges that on October 17, 2008, while Conner executed a warrant to arrest Plaintiff, Conner failed to "knock and announce" prior to entering Plaintiff's residence in violation of California Penal Code section 844. Complaint ¶¶ 53, 55.[18] Conner argues that he is entitled to qualified immunity on this claim. In support, Conner attaches his declaration and the declarations of the three other arresting police officers, all stating that Conner knocked and announced the officers' presence for three or four minutes prior to entering Muhammad's residence. Conner

---

[17] Situations presenting such exigent circumstances to justify a no-knock entry include when there is a "'presen[t] a threat of physical violence,' or if there is 'reason to believe that evidence would likely be destroyed if advance notice were given.'" *Hudson*, 547 U.S. at 589-90.
[18] Section 844 provides: "To make an arrest, . . . a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing the person to be, after having demanded admittance and explained the purpose for which admittance is desired."

Dec. ¶ 24; Kennedy Dec. ¶ 8; Moreno Dec. ¶ 8; Patel Dec. ¶ 10. However, Conner also attaches excerpts from Muhammad's deposition during which Muhammad testified that the police officers did not knock or announce their presence prior to entering his dwelling. Muhammad Dep. at 137:12-24. The officers later described Muhammad's unit as "small," such that a person inside Muhammad's dwelling would have heard Conner knocking. Patel Dec. ¶ 12; Moreno Dec. ¶ 10.

Thus, Conner has failed to carry his burden to demonstrate the absence of a genuine issue of material fact for trial. *Celotex Corp.*, *supra*, 477 U.S. at 323, 106 S.Ct. 2548. The record evidence supports both Conner's and Muhammad's version of the events. For purposes of deciding Conner's summary judgment motion, the Court must view the evidence and draw all reasonable inferences in the light most favorable to Muhammad. This requires the Court to assume that the officers did not knock prior to entering Muhammad's dwelling because Muhammad's unit is small and if the officers had knocked, Muhammad, who says he has excellent hearing, would have heard their knocks. Further, Muhammad was not found trying to escape but was sitting on his bed partially dressed. Muhammad's version of the events as set forth in his sworn deposition testimony, describes constitutionally proscribed conduct.

Conner also argues that a no-knock entry was justified under the circumstances, and, thus, he is entitled to qualified immunity because after he knocked and announced his presence, "he was reasonable in believing that knocking and announcing was futile, and/or the Plaintiff was trying to frustrate attempts to arrest him by not coming to the door." MSJ 28. This argument does not provide facts to justify a no-knock entry, it just disputes the fact of a no-knock entry.

Conner is not entitled to qualified immunity for the alleged knock and announce violation. He has failed to carry his burden to demonstrate the absence of a genuine issue of material fact for trial. *Celotex Corp.*, *supra*, 477 U.S. at 323, 106 S.Ct. 2548. Therefore, summary judgment is DENIED as to this claim.

### C. MUHAMMAD'S FAILURE TO COMPLY WITH THE CALIFORNIA TORT CLAIMS ACT BARS ANY REMAINING STATE LAW CLAIM

Even though Conner is not entitled to qualified immunity from suit for a Fourth Amendment violation arising out of the alleged no-knock entry, any state law claim for violation of Penal Code § 844 is barred by Muhammad's failure to comply with the California Tort Claims Act.  In order to assert state law tort claims against a public employee such as Conner, the California Tort Claims Act requires that Muhammad first present the claim for damages to the governmental entity, here, the Office of the Clerk to the Board of Supervisors for Alameda County.  Cal. Gov. Code §§ 911.2, 950.2. Claim presentation is not merely a procedural requirement, but rather, it is a precondition to filing suit, and thus, an element of Muhammad's state law causes of action.  *See K.J. v. Arcadia Unified School District*, 172 Cal. App. 4th 1229, 1238 (Cal. Ct. App. 2d Dist. 2009).

In Count X, Muhammad alleges that Conner's no-knock entry into Muhammad's dwelling violates California Penal Code § 844.  The undisputed record evidence demonstrates that Muhammad did not present this or any other state law claim to Alameda County prior to filing his lawsuit against Conner.[19]  Accordingly, Muhammad's failure to comply with the claims filing prerequisite before filing suit against a public employee renders Muhammad unable to prove an essential element of his state law claim for violation of California Penal Code § 844.[20]  Therefore, entry of summary judgment as to any state law claims embodied in Count X is appropriate.

### D. EXCESSIVE USE OF FORCE – COUNTS XI & XII

In his Eleventh Count, Muhammad alleges that Conner used excessive force when he arrested Plaintiff with a "gun in hand" and waived the gun in Muhammad's face, which Plaintiff alleges in the Twelfth Count constitutes "elder abuse" under California Welfare & Institutions Code § 15600. Complaint ¶¶ 61-66, 68.  Specifically, Muhammad alleges that on October 17, 2008, Conner burst

---

[19] Muhammad conceded this fact at oral argument.
[20] Muhammad's failure to present his claims to Alameda County prior to filing this lawsuit would bar his remaining state law claims if Conner was not otherwise entitled to qualified immunity on those claims.

into his bedroom "with gun in hand, saying: 'Are you James Muhammad? I am Inspector Bob Conner who you hung the telephone up on August 25.'" Muhammad Dep. 103:15-18. Muhammad further alleges that, while he "was not shot or beaten," "mentally, he was sufficiently shocked enough to have committed an unlawful act against the police (which could have caused him to be killed by Bob Conner who was in the lead with gun in hand)." Complaint ¶ 69.

Claims that an arresting officer used excessive force are analyzed under the Fourth Amendment reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865 (1989). This inquiry turns on the "objective reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, *supra*, 555 U.S. at 244, 129 S.Ct. 808 (quoting *Wilson v. Layne*, 526 U.S. 603, 614, 119 S.Ct. 1692 (1999) (internal quotation marks omitted)). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Arpin v. Santa Clara Valley Trans. Agcy.*, 261 F.3d 912, (9th Cir. 2003) (quoting *Graham*, *supra*, 490 U.S. at 396, 109 S.Ct. 1865).

In certain cases, pointing a gun to the head of an unarmed suspect has been found to constitute excessive force. *Tekle v. United States*, 511 F.3d 839, 847 (9th Cir. 2007). However, the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, *supra*, 490 U.S. at 396, 109 S.Ct. 1865 (citing *Terry v. Ohio*, 392 U.S. 1, 22-27, 88 S.Ct. 1868 (1968)). Deciding whether an officer's actions were reasonable requires the Court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (internal quotation marks omitted). The relevant factors include: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8-

9, 105 S.Ct. 1694 (1985)).[21]  In this case, based on the evidence presented, the Court finds that as a matter of law the threatened use of force was not excessive.

The analysis starts with considering the quantum of force used to arrest Muhammad.  *See Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (*en banc*).  Only the threat of force was employed.  While Muhammad alleges in his Complaint that Conner waived a gun in his face, the record evidence establishes that "Conner held his gun pointed at Plaintiff's body (not his head) from a few feet away."  Patel Dec. ¶ 12.  No evidence has been presented that Conner's gun was aimed at Muhammad any longer than necessary for Officer Patel to handcuff Muhammad, and the parties agree that once Muhammad was handcuffed, Conner holstered his gun.  Furthermore, Muhammad does not allege that it was unreasonable or excessive to handcuff him.

Next, the Court must consider the countervailing governmental interests at stake based on the objective facts and circumstances that confronted Conner at the time of the arrest.  The single most important factor is whether the suspect poses an immediate threat to the safety of the officers.  *See Smith*, *supra*, 394 F.3d at 702.  Here, Muhammad had a criminal history with multiple prior violent felonies; Muhammad had been confrontational on the telephone with Conner; and although Muhammad was 75 years old at the time, given the extent of Muhammad's criminal history, Muhammad might fear that if arrested, his conviction would result in incarceration for the remainder of his life.  Based upon these facts, it was both reasonable for Conner to believe that Muhammad might resist arrest and for Conner to be fearful of an armed or violent response from Muhammad. The second and third *Graham* factors are the severity of the crime and whether the suspect is resisting arrest or attempting to flee.  *Graham*, *supra*, 490 U.S. at 396, 109 S.Ct. 1865.  Here, the crimes were non-violent, and Muhammad did not resist.

---

[21] The Ninth Circuit indicated that other relevant factors may include "whether a warrant was used, whether the plaintiff resisted or was armed, whether more than one arrestee or officer was involved, whether the plaintiff was sober, whether other dangerous or exigent circumstances existed at the time of the arrest, and the nature of the arrest charges."  *Chew v. Gates*, 27 F.3d 1432, 1440 n.5 (9th Cir. 1994).

Considering the totality of the circumstances, in light of the objective facts and circumstances that Conner confronted at the time of the arrest, the severity and extent of the force used was not excessive as a matter of law. It was objectively reasonable for Conner to believe that Muhammad may resist arrest, and it was objectively reasonable to prepare for the possibility of an armed or violent response from Muhammad. Conner's response was proportional to the perceived threat: Conner had his weapon drawn and pointed at Muhammad; as soon as Muhammad was handcuffed, the threat of resistance lessened and Conner holstered his gun. Therefore, given the nature of the force used, and for the reasons stated above, the Court finds the threatened use of force was not unreasonable under the circumstances, and the Court holds that no constitutional violation occurred.

## IV.   CONCLUSION

For the foregoing reasons, the motion for summary judgment or alternatively for partial summary judgment, ECF No. 98, is GRANTED IN PART and DENIED IN PART. Summary judgment is GRANTED as to Counts VI, IX, and XI of Muhammad's Complaint. The factual dispute as to whether Defendant knocked and announced his presence precludes a grant of summary judgment on Count X. Therefore, Conner is not entitled to qualified immunity from suit for the alleged Fourth Amendment "Knock and Announce" violation and the Motion for Summary Judgment is DENIED as to Count X.

**IT IS SO ORDERED.**

**Dated:** February 29, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**