UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES KARIM MUHAMMAD,<br><br>  Plaintiff,<br><br>  vs.<br><br>BOB CONNER, as an individual and as District Attorney Inspector,<br><br>  Defendant(s). | Case No.: 10-CV-1449 YGR<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL |

Plaintiff James Muhammad ("Plaintiff") has filed a Motion for a New Trial on the grounds that the dismissal or summary adjudication of all but one of his claims limited the evidence he could present at trial, and together with the admission of his prior felony convictions denied him a fair trial.

Having carefully considered the papers submitted, for the reasons set forth below, the Court hereby **DENIES** the Motion for a New Trial.[1]

I.  **BACKGROUND**

This action arises out of the criminal investigation, arrest, and subsequent conviction of Plaintiff for six felony counts of election and voter registration fraud in February 2011.  After his arrest, but prior to his convictions, Plaintiff filed this lawsuit against Defendants Jeffrey Stark, the

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds that this motion, which has been noticed for hearing on July 3, 2012 is appropriate for decision without oral argument. Accordingly, the Court **VACATES** the hearing set for July 3, 2012.

Assistant District Attorney who obtained the arrest warrant; Bob Conner, a District Attorney Inspector and one of the arresting officers; Cynthia Conejo, the Assistant Registrar of Voters for Alameda County; and the "People of California." Plaintiff's Complaint, titled "Complaint Declaratory Judgment for Negligence of State to Properly Supervise its Contractors-Officers and/or Employees and for Civil Damages," asserted fourteen causes of action for claimed violations of federal civil rights and various state laws based on the criminal investigation and his arrest. In his prayer for relief, Plaintiff requested a total of $57 million in monetary damages, a "complete discharge from all custody and restraint by the People of the State of California against James Karim Muhammad in case No. 544924," and costs of suit.

### A. ORDER GRANTING IN PART MOTION TO DISMISS

On March 11, 2011, the judge, to whom this case was initially assigned, granted in part the individual Defendants' motion to dismiss, and dismissed all claims against Defendants Stark and Cornejo, and dismissed all but four claims against Conner, on immunity grounds.[2] The remaining claims against Conner were for presenting a false affidavit to a judge to obtain the arrest warrant; failure to knock and announce prior to entering Muhammad's residence to execute the warrant; use of excessive force during the arrest, which excessive force constituted elder abuse claims.

### B. PLAINTIFF DIRECTED TO SERVE DEFENDANT "PEOPLE OF CALIFORNIA"

In the same March 11, 2011 Order, the Court found that Plaintiff's attempt to serve Defendant "People of California" was inadequate and ordered Plaintiff to serve the "People of California" within fourteen days, and file a Certificate of Service. Plaintiff was warned that if he failed to file a Certificate of Service "the People of California shall be dismissed without prejudice," pursuant to Federal Rule of Civil Procedure 4(m), for failure to serve. Plaintiff never filed a Certificate of Service in response to the March 11, 2011 Order. In the parties' Joint Case Management Conference Statement, filed on May 13, 2011, Plaintiff indicated that he did not contemplate "continued pursuance of the 'People of California.'" *See* Joint Case Management Conference Statement, Dkt.

---

[2] The Court dismissed Muhammad's Fourth Amendment claims related to the allegations that Conner unlawfully seized evidence from the files of the California Registrar of Voters and the California Department of Vehicles on the basis that Plaintiff could not have a reasonable expectation of privacy in information that was contained in the public records.

No. 77, at 2:12-14. On March 19, 2012, the Court dismissed Defendant "People of California" without prejudice on the basis that Plaintiff never filed a Certificate of Service in response to the March 11, 2012 Order. Dkt. No. 137.

### C. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT IS DENIED

Defendant Conner did not file an Answer within two weeks of the Order on the Motion to Dismiss, and on Friday, April 1, 2011, Plaintiff moved for a Clerk's Default. On Monday, April 4, 2011, Conner filed an Answer and later that day, the Clerk declined to enter default. Subsequently, Plaintiff moved for entry of default judgment, which the Court denied. In the Order denying default judgment the Court noted that "Defendant's answer was filed late, but less than two weeks after it was due." Dkt. No. 93 at 3:20-21. The Court concluded that there was no prejudice from this delay, but that based on the amount of money Plaintiff sought – $19 million from Conner – entering default would have been manifestly unjust. Furthermore, the Court found that Conner was vigorously defending against the allegations in Plaintiff's complaint, demonstrating an intent to defend, and Conner was participating in discovery. Balancing these factors and the strong policy favoring decisions on the merits, default judgment was denied.

### D. SUMMARY JUDGMENT IS ENTERED ON ALL BUT CLAIM FOR KNOCK-AND-ANNOUNCE VIOLATION

On February 29, 2012, the Court granted in part Conner's motion for summary judgment. The Court granted summary judgment for Conner on Muhammad's claims based on the false warrant affidavit and use of force on the grounds that those claims were barred by qualified immunity. The Court denied summary judgment on Plaintiff's Fourth Amendment knock-and-announce claim. The Court concluded that there was a disputed issue of fact for trial as to whether Conner "knocked and announced" his presence prior to entering Muhammad's dwelling.

### E. JURY FINDS FOR DEFENDANT ON KNOCK-AND-ANNOUNCE VIOLATION

A two-day jury trial was held on April 16 and April 17, 2012 to decide the remaining knock-and-announce claim. The trial was bifurcated into a liability and a damages phase. If the jury found that Conner failed to knock and announce prior to entering Plaintiff's apartment to execute search and arrest warrants, then the parties would proceed to the damages phase. At trial, the jury heard

testimony from Muhammad, Conner, and the three officers who were present when Conner executed the search and arrest warrants at Plaintiff's apartment. Muhammad testified under oath that Conner did not knock and announce. Conner and the other officers testified under oath that Conner did. After deliberating for sixteen minutes, the jury returned a unanimous verdict in favor of Conner. *See* Dkt. Nos. 156, 157, 162 & 163.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 59(a)(l),[3] the court may grant a new trial "on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," district courts are "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Those grounds include (1) a verdict that is contrary to the weight of the evidence, (2) a verdict that is based on false or perjured evidence, (3) that damages are excessive, or (4) to prevent a miscarriage of justice. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). Erroneous evidentiary rulings and errors in jury instructions are also grounds for a new trial. *See Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995); *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).

## III. DISCUSSION

Plaintiff raises 13 grounds for a new trial, which the Court will categorize as: (A) pretrial rulings dismissing claims and defendants; and (B) evidentiary rulings. He does not complain that the verdict was contrary to the weight of the evidence – indeed, his motion indicates that "plaintiff simply failed to present sufficient evidence to prove his claim"; nor does he claim that the verdict was based on false or perjured evidence. Furthermore, no damages were awarded. Therefore, the Court can only conclude that Plaintiff's motion is brought either to prevent a miscarriage of justice or based on

---

[3] Plaintiff also cites Federal Rule of Civil Procedure 50 as a basis for his motion. Procedurally, in order to bring a post-trial Rule 50(b) motion a party first must have moved for judgment as a matter of law before the case is sent to the jury. *Tortu v. Las Vegas Metropolitan Police Dep't*, 556 F.3d 1075, 1081-83 (9th Cir. 2009). Since Plaintiff never moved for judgment as a matter of law pursuant to Rule 50(a) prior to the case being sent to the jury, Plaintiff may not bring a post-trial Rule 50(b) motion. Nevertheless, the relief sought–a new trial– is available under Rule 59.

erroneous evidentiary rulings. As set forth below, Plaintiff does not establish that either reason justifies a new trial.

### A. PRETRIAL RULINGS

Plaintiff complains that the trial only involved the knock-and-announce claim because all other claims were dismissed; the trial failed to include Defendants Stark and Cornejo, the claims against whom were dismissed; the Court never determined whether Conner filed a timely answer; and the People of California were improperly dismissed without any citation to legal authority.[4] While Plaintiff may disagree with the rulings, he has not provided any basis for the Court to revisit any of the rulings on a motion for a new trial (or a Rule 50 Motion). None of the rulings inhibited Plaintiff from prosecuting his claim for a knock-and-announce violation. Therefore, Plaintiff is not entitled to a new trial on his knock-and-announce claim based upon any of these pretrial rulings.

Plaintiff complains that the cumulative effect of these pretrial rulings dismissing all but one of his claims was to convert his declaratory judgment action into a civil rights action. What Plaintiff overlooks is that declaratory relief is merely a form of relief that a court may grant in response to a valid underlying claim. The Declaratory Judgment Act does not provide an independent theory for recovery; if the underlying claims are dismissed, summarily adjudicated, or otherwise decided against Plaintiff then there is no basis for any declaratory relief. *See Hoeck v. City of Portland*, 57 F.3d 781, 787 (9th Cir. 1995). Accordingly, the Court did not convert his lawsuit into a civil rights action, but rather, his causes of action were either barred by the doctrine of qualified immunity or he simply failed to provide evidence to support his claims.[5]

Based on the foregoing analysis, the Court concludes that Plaintiff has failed to set forth a valid basis for a new trial based on the dismissal of claims or defendants prior to trial.

---

[4] As set forth below, many of these assertions are factually inaccurate.

[5] To the extent that Plaintiff seeks to litigate the legality of his state court criminal convictions, a lawsuit brought pursuant to 42 U.S.C. § 1983 is not a means to overturn a criminal conviction. The doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), precludes Section 1983 claims that would render a criminal conviction invalid where that conviction has not been reversed, expunged, or called into question by issuance of a writ of habeas corpus. Furthermore, the Court would not have subject matter jurisdiction to issue a declaratory judgment if Plaintiff was *not* claiming violations of his civil rights under 42 U.S.C. § 1983. Accordingly, if Plaintiff's lawsuit, which seeks $57 million and a "complete discharge from all custody and restraint by the People of the State of California against James Karim Muhammad in case No. 544924," only sought a declaratory judgment, the Court would not have the authority to adjudicate his lawsuit.

5

B.  **EVIDENTIARY RULINGS**

As to the evidentiary rulings, none of the proffered evidence is relevant to his claim for a knock-and-announce violation. Evidentiary rulings made during trial are reviewed under the abuse of discretion standard. *Glover v. BIC Corp.*, 6 F.3d 1318, 1328 (9th Cir. 1993). Reversal for evidentiary error requires proof of both error and prejudice. *Id*. As set forth below, none of the evidentiary rulings cited by Plaintiff meet this standard.

1.  *Evidence of gun pointed at head*

Plaintiff contends that he was prejudiced when the Court prohibited him from presenting testimony that after Conner entered Plaintiff's apartment, that Conner pointed a gun at Plaintiff's head, and prohibited Plaintiff from presenting testimony that he was subjected to shock as a result of the gun pointed at his head. Both the alleged pointing of a gun at Plaintiff and the shock to which Plaintiff may have been subjected occurred after Conner entered Plaintiff's apartment. Prior to trial, the Court ruled that to the extent any relevance exists, any probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and waste of time. Dkt. No. 151 (citing Fed. R. Evid. 403). The parties agreed that the case would be bifurcated into a liability and damages phase; if the jury found for Plaintiff on the issue of liability, then the jury would hear evidence on whether Conner pointed a gun at Plaintiff's head, and whether Plaintiff was subjected to shock as a result. Because the jury never found any liability there was no need to proceed to the damages phase of the trial. Therefore, the Court concludes that it was not erroneous to exclude this evidence, nor was Plaintiff prejudiced by its exclusion.

Although the parties were instructed prior to trial not to introduce any evidence that Conner pointed a gun at Plaintiff's head, during Plaintiff's opening statement, Plaintiff mentioned that Conner pointed a gun at Plaintiff's head. Plaintiff now complains that the Court prejudiced him by not subsequently allowing him to present this evidence during his case in chief. According to Plaintiff, by not allowing testimony that Conner entered his apartment with a gun pointed at Plaintiff's head, it implicitly directed a verdict against Plaintiff because Plaintiff could not prove the case stated in his opening statement. Plaintiff never raised this objection at trial; indeed, it would be unfair to Defendant if Plaintiff was allowed to introduce errors into his own trial, wait for a verdict and then

cry foul if the jury decides against him. Additionally, Conner's conduct subsequent to entering Plaintiff's apartment is not directly relevant to Conner's conduct prior to entering Plaintiff's apartment. Jurors are presumed to follow directions. The jury was instructed to determine whether Conner knocked prior to entering Plaintiff's apartment. The jury found that Conner did knock.

Based on the foregoing analysis, the Court concludes that Plaintiff has failed to show that exclusion of this evidence was in error or that Plaintiff was prejudiced by its exclusion.

### 2. *Pretrial evidentiary rulings on motions in limine*

Plaintiff also claims he was "seriously prejudiced" when the Court refused to allow Plaintiff to introduce evidence that the People of California had been properly served and that the "People of California" had not defended. The Court determined that the "People of California" had not been properly served and allowed Plaintiff an opportunity to properly serve the "People of California." Plaintiff never filed a proof of service to demonstrate that the "People of California" were properly served and before trial the "People of California" were dismissed from the lawsuit. Plaintiff may disagree with this decision, but he cannot claim prejudice.[6] Whether Defendant the "People of California" was served or failed to defend is not relevant to the question of whether Conner knocked prior to entering Plaintiff's apartment. None of Plaintiff's other claims required, as an element of the cause of action, proof that a party was served and failed to defend. These are not factual issues to be resolved by a jury. Therefore, it was not error to exclude this evidence.

Based on the foregoing analysis, the Court concludes that Plaintiff has failed to show that exclusion of this evidence was in error or that Plaintiff was prejudiced by exclusion of the evidence.

### 3. *Conner given "free range" to present evidence re: Plaintiff's convictions*

Plaintiff complains that Conner was given "free range" to "raise issues that plaintiff was a criminal who had been convicted of felonies." This is not an accurate statement of the Court's

---

[6] Defendant moved *in limine* to exclude evidence of or reference to claims or parties that were dismissed by the Court's March 11, 2011 and February 29, 2012 Orders, Dkt. Nos. 62 & 136; and to exclude any evidence or argument that Conner was in default or that Plaintiff was entitled to entry of default judgment in his favor against Conner. *See* Dkt. Nos. 140, 141. Plaintiff did not file an opposition to either motion. The Court ruled that this evidence was irrelevant under Federal Rule of Evidence 401 and to the extent that any relevance exists, under Federal Rule of Evidence 403, the probative value was substantially outweighed by the risk of confusion of the issues, misleading the jury, and waste of time. *See* Dkt. No. 151 ¶ 2(b)-(c).

rulings or the presentation of evidence at trial.

Prior to trial the Court was asked to rule on the admissibility of Plaintiff's six felony convictions for election and voter registration fraud. *See* Dkt. No. 151. The Court first determined that under Federal Rule of Evidence 609(a)(2), "[a]ll six of Plaintiff's felony convictions are admissible to impeach Plaintiff's credibility because all six convictions are for crimes that involve dishonesty or a false statement." *Id.* ¶ 2(d). Specifically, the Court ruled that "to the extent that Plaintiff himself does not admit the convictions during direct examination, they may be used during cross-examination for the purpose of impeaching his credibility." *Id.* Plaintiff does not complain that the convictions were not admissible. *See* Fed. R. Evid. 609(a)(2). Plaintiff's perjury and fraud convictions were recent and were directly relevant to the issue of Plaintiff's credibility, a fundamental issue in the case.

Plaintiff himself elicited the testimony regarding his own convictions during direct examination of Conner. A party who preemptively introduces evidence of a prior conviction on direct examination may not later claim that the admission of such evidence was error. *Ohler v. United States*, 529 U.S. 753, 754 (2000) (criminal defendant may not challenge *in limine* ruling allowing felony conviction as impeachment evidence where defendant admits to conviction on direct examination).

Based on the foregoing analysis, the Court concludes that Plaintiff has failed to show that admission of this evidence was in error.

          4.    *Judicial Notice*

Plaintiff argues that he was prejudiced when the Court voluntarily took judicial notice that Plaintiff had been convicted of perjury. This is not an accurate characterization of the manner in which this evidence was admitted into the record. Defendant introduced the records of Plaintiff's convictions into evidence and the Court read the names of the crimes for which Plaintiff had been convicted into the record. Three of the crimes for which Plaintiff was convicted had the word "perjury" in the title. Thus, the Court did not "voluntarily" take judicial notice. Additionally, Plaintiff never objected to reading the names of the crimes into the record. As noted above, all six of Plaintiff's felony convictions were for crimes that involved dishonesty or false statement and

therefore, all six crimes were admissible to impeach Plaintiff's credibility.

Based on the foregoing analysis, the Court concludes that Plaintiff has failed to show that admission of this evidence was in error.

5. *Plaintiff's claim that he was prejudiced because the Court did not take judicial notice of certain "facts."*

Plaintiff argues that he was "seriously prejudiced" when the Court did not voluntarily take judicial notice of the year of Plaintiff's conviction for armed robbery, which Plaintiff contends was 1951. As noted above, Plaintiff elicited testimony regarding his prior criminal convictions during direct examination of Conner.[7] Conner could not recall what year Muhammad was convicted for armed robbery. Plaintiff never requested the Court take judicial notice of the year of the conviction but Plaintiff claims he was prejudiced because the Court did not voluntarily take judicial notice of this "fact." No record of Plaintiff's armed robbery conviction was introduced into evidence and Plaintiff provides no basis for the Court to act *sua sponte* in this regard. Accordingly, Plaintiff has failed to show error. Moreover, that Conner could not recall what year these prior convictions is not directly relevant to the question of whether Conner knocked and announced prior to entering Plaintiff's apartment in 2008. Therefore, Plaintiff also has failed to show prejudice.

Plaintiff also complains that the Court did not voluntarily take judicial notice that police departments have video and audio surveillance equipment. Plaintiff never requested the Court take judicial notice of this "fact" and provides no basis for the Court to do so *sua sponte*. Furthermore, it is not clear that the type of surveillance equipment used by police departments is information subject to judicial notice (*i.e.*, "a fact that is not subject to reasonable dispute"). Accordingly, Plaintiff has failed to show error.

Plaintiff further complains that the Court failed to rule on his request for judicial notice that Defendant Conner failed to file a timely answer. Plaintiff does not argue error or prejudice. After carefully reviewing the docket, the Court is unable to locate any request for the Court to take judicial notice that Conner did not timely answer and Plaintiff has not directed the Court to that part of the

---

[7] The Court was not asked to make a determination regarding the admissibility of the 1951 conviction and it does not appear that Muhammad is now arguing that admitting the evidence was error.

9

record where he made such a request. Even if Plaintiff had made such a request for judicial notice,[8] the Court, in granting Defendant's Motion *in Limine*, ruled that any evidence or argument that Defendant Conner was in default or that Plaintiff is entitled to entry of default judgment in his favor against Defendant Conner was inadmissible because it was not relevant.[9]

Based on the foregoing analysis, the Court concludes that Plaintiff has failed to show that not taking judicial notice was error or prejudicial.

## IV. CONCLUSION

Plaintiff has not established that any of the reasons presented constitute grounds for a new trial. Therefore, the Motion for a New Trial is **DENIED**.

This Order Terminates Docket Number 170.

**IT IS SO ORDERED**.

Date: June 26, 2012

                              **YVONNE GONZALEZ ROGERS**
                             **UNITED STATES DISTRICT COURT JUDGE**

---

[8] One of Plaintiff's proposed jury instructions directs the jury to accept the fact that Conner did not timely file an answer as having been proven. *See* Dkt. No. 150 at 13. It is not clear whether Plaintiff intended the proposed jury instruction to serve as a request for judicial notice.

[9] The Court ruled that Conner did not file a timely answer but declined to enter default judgment against Conner. Plaintiff never requested leave to file a motion for reconsideration of that decision.